(December 2, 1907.)

JAMES WOODWARD, Appellant, v. THE CITY OF GRANGEVILLE, a Municipal Corporation, et al., Respondents.

[92 Pac. 840.]

MUNICIPAL CONTRACTS—MUNICIPAL BONDS—EVASION OF THE LAW LIMITING MUNICIPAL BONDED INDEBTEDNESS.

1. A contract signed by the mayor of a city is not a binding obligation of said city, when the law does not authorize such officer to make such contract, and said contract has not been authorized or ratified by said city.

2. Municipal bonds voted by the electors of a city to raise revenue to make payment under a void contract become void when said contract is declared void.

3. A city cannot evade the provisions of the statute, limiting the bonded indebtedness to fifteen per cent of the real estate valuation for the preceding year, by voting bonds for partial payment on a contract, and making no legal provision for the balance due upon said contract.

(Syllabus by the court.)

APPEAL from the District Court of Second Judicial District for Idaho County. Hon. Edgar C. Steele, Judge.

Action by the plaintiff, a resident taxpayer, against the defendant city, and its officers, to cancel a contract and restrain the issuing of bonds to make payment under said contract. Judgment for the defendant. Appeal from the judgment. *Reversed.*

James Woodward, and Jas. DeHaven, for Appellant.

The contract with the administrator and heirs of the estate of W. M. Jack, deceased, is clearly void as to $2,000 of the purchase price of said Grangeville Waterworks. (*Bannock Co. v. Bunting*, 4 Idaho, 156, 37 Pac. 277.)

The purchase of this system is not an ordinary or necessary expense, and it has not been shown that any provision has been made for the payment of said sum, or that there is sufficient money on hand in any fund for such payment. By reference to that contract, it will be seen that the submission of the question of issuing bonds to a vote of the taxpayers and the issuance of the bonds are both provided for, and that said contract and the successive steps taken in pursuance thereof constitute one transaction, and if the contract is void in part, then all subsequent proceedings thereunder are void, for its provisions cannot be separated and a part held valid and a part invalid.

The defendants not having proven that provision for payment had been made, it will be presumed that none had been made. (2 Am. & Eng. Ency. of Law, 1st ed., 652, and cases cited; 16 Cyc. 936, 937; *Dirks v. California Safe Deposit Co.*, 136 Cal. 84, 68 Pac. 487; *Melone v. Ruffino*, 129 Cal. 514, 79 Am. St. Rep. 127, 62 Pac. 93.)

The proposed bonds, if sold, will increase the debt of the City of Grangeville beyond the statutory limit. An indebtedness of $2,000 (not an ordinary or necessary expense) is sought to be incurred without the question having been submitted to a vote of the taxpayers of the city. No provision has been made to raise money by taxation to pay either the interest on said bonds, or to create a sinking fund for the payment thereof at their maturity; and the purpose for which the money from sale of such bonds is to be used is a different purpose from that recited in Ordinance No. 51.

R. F. Fulton, W. N. Scales, and M. Reese Hattabaugh, for Respondents.

The contract with the Jacks provided for a purchase price of $32,000; the people of the city of Grangeville voted a bond issue of $30,000 for the construction or purchase of a system of waterworks. Under the ordinances and the election it is absolutely immaterial whether the city purchases the Jack system or builds another system or purchases some other system; and the proceeds of the bonds could be used for either of said purposes.

If it required under the contract with the Jacks more money than the city could legally raise or expend, they could not, and would not, purchase the Jack system, but the funds raised would be applied to the purchase or construction of another system.

There are many and various ways in which this $2,000 could be paid without violating the law; but if it should arise that the city could not pay this, it would in no wise affect the validity of the bond issue; it would simply go with the question of enforcing the contract made with the Jack heirs.

Whether the city constructs a new system or purchases one already constructed is entirely immaterial. The object and purpose of the statute is to provide water for the inhabitants of the city.

STEWART, J.—On the twenty-seventh day of December, 1905, the estate of W. M. Jack, deceased, entered into a contract with the city of Grangeville, through its mayor, whereby said estate agreed to sell, and said city agreed to buy, a certain water system owned by said estate. It was provided in said contract that the purchase price should be $32,000, and that the question of issuing bonds for the purchase of said system should be submitted to the electors of said city for approval. The contract provided that the amount of bonds to be issued should be of such part of $32,000 as might be issued under the laws of the state. On the fifth day of February, 1906, the city council of said Grangeville passed Ordinance No. 51, providing for the issuing of municipal coupon bonds for the purpose of providing funds for the "acquisition, construction and maintenance of a system of waterworks for said city, in the sum of $30,000." Said ordinance provides in section 3 that the estimated cost of the said system of waterworks and the supplying the same with water is the sum of $32,000, and that it is deemed advisable to issue coupon bonds for the sum of $30,000 of the said estimated cost of said system of waterworks. Section 6 of said ordinance provides that there shall be levied annually by the council of the said city, upon all taxable property within said city, a sufficient sum to pay the interest on said bonds and create a sinking fund to pay the same at maturity. An election was held under said ordinance which resulted in favor of issuing bonds as provided in said ordinance. On April 2, 1906, notice was given of the intention to issue and sell municipal bonds of said city in the sum of $30,000, as authorized by said Ordinance No. 51. On June 4, 1906, Ordinance No. 55 was passed by the city council of said city, making an appropriation for the general expenses of said city. On January 7, 1907, Ordinance No. 60 was passed by the city council, providing for the issuing of coupon bonds of said city in the sum of $30,000 for the construction and maintenance of necessary waterworks, and supplying same with water in accordance with the election previously held in said city, and providing for the form and

date of such bonds, etc. In section 5 of said Ordinance No. 60 it is provided that an annual tax sufficient to pay the interest on said bonds when the same falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty years, shall be and is hereby levied upon all taxable property within said city of Grangeville, a direct, continuing, annual tax, sufficient to produce $1,500 yearly for interest and $1,500 yearly for principal. The foregoing facts are alleged in detail in the complaint, and the plaintiff further alleged that the taxable real property of the city of Grangeville as equalized for the year 1905, the year prior to the date of such proposed bonds, did not exceed $275,000; that the total bonded indebtedness of said city is $5,860, and the total warrant indebtedness, including interest, more than $15,000, and that if the said proposed bonds are sold, the bonded and floating indebtedness of said city will aggregate more than $50,000, which is far in excess of fifteen per cent of the assessed valuation of the real property of said city as equalized for the year 1905; that notwithstanding the purpose of the issue of the said proposed bonds declared in Ordinance No. 51 to be the acquisition of a system of waterworks, it is the declared intention of said city to invest the proceeds of the sale of said waterworks bonds in the said Grangeville waterworks now owned by the estate and heirs of said W. M. Jack, deceased, as per contract, and that no provision whatever has been made for the payment of the $2,000 of the purchase price thereof, in excess of the said bond issue of $30,000. The plaintiff in his prayer asked that the defendants be restrained by injunction from selling or disposing of the said municipal coupon water bonds, and that they may be delivered up and canceled, and that the city be restrained from purchasing the said Grangeville waterworks, and for costs.

The defendants answered and admitted that the plaintiff was a resident taxpayer of said city; that the defendant is a municipality and the officers therein named were the officers of said city, and that John M. Jack was the duly qualified and acting administrator of the estate of W. M. Jack, de-

ceased; the making of the contract set forth in the complaint; the passing of Ordinance No. 51 on February 5, 1906, relating to the purchase of the Grangeville waterworks and providing for the submission of the question of the issuance of bonds to the amount of $30,000 to the qualified electors of said city, but deny that said ordinance related to the purchase of the Grangeville waterworks or any particular water system, but contained only a general provision for acquiring a system of waterworks. Admit the holding of an election after due notice, and that more than two-thirds of the electors of said city voting at said election voted in favor of the issuing of said $30,000 of bonds. Admit the making of the bid of the defendants S. A. Kean & Company for said bonds to be dated May 1, 1906, and to be sold June 4, 1906, for $100.25 or $30,075 in the aggregate. Admit that on June 4, 1906, the city council passed Ordinance No. 55, known as the Annual Appropriation Bill and Tax Levy. Admit that on October 16, 1906, Ordinance No. 60 was duly passed relating to the issue and sale of said bonds and prescribing the form, etc., thereof, but deny that no provision has been made for the payment of interest and the creation of a sinking fund, and allege that full, adequate and complete provision has been made by the council of said city for the payment of the interest on said bonds and to provide a sinking fund for the payment thereof. Deny that the total bonded indebtedness of said city exceeds $5,000, and deny that the warrant indebtedness exceeds $12,000. Deny that if the bonds were issued that the bonded and floating indebtedness of said city will aggregate more than $50,000, or that the bonded and floating indebtedness of the city would be in excess of fifteen per cent of the assessed valuation of the real property of said city. Admit that it is the intention of said city to invest the proceeds of the sale of said water bonds in the said Grangeville waterworks now owned by the estate and heirs of said W. M. Jack, deceased, but deny that it is contrary to or against the provisions of Ordinance No. 51, and deny that no provision has been made for the payment of the $2,000 of the purchase price named in said contract in excess of the

$30,000 proposed bond issue made for the purpose of applying on said contract.

The plaintiff specifies as error of law on the part of the trial court "the rendering judgment denying plaintiff's application for an order restraining the sale of said bonds and dismissing said action." The view we take of the case requires, first, the determination of the validity of said contract; second, the validity of the bonds to be issued to raise funds to meet the obligations of said contract.

Was the contract made between said estate of W. M. Jack and the said city valid? This contract on behalf of the city was made by Fen Batty, mayor of said city, without any authorization by the city council or any approval or ratification on the part of said city. Under the provisions of an act of February 10, 1899, in relation to the organization, government and powers of cities and villages, the mayor of cities is given certain powers, which are fully set forth in section 10 of said act, but it nowhere appears that the mayor of a city has power to enter into a contract of the character set forth in the complaint, without the authorization or ratification of the city council of said city. In this case, without said contract having been authorized by the city, or having been ratified by the city, the mayor would have no authority to enter into the same as a binding obligation of said city. The contract provides for the sale of said Grangeville waterworks to said city for the sum of $32,000, while it is admitted by the pleadings and the briefs the city had no authority to issue bonds to meet such payment. It is admitted that under the provisions of section 1 of an act providing for the issue and sale of municipal coupon bonds, approved February 2, 1899 (Sess. Laws 1899, p. 29), said city could not issue municipal bonds to exceed at any time, in the aggregate, fifteen per cent of the real estate value of said city or town, according to the assessment of the preceding year, for any or all of the following purposes (naming such purposes).

The real estate valuation of said city for the year 1905 was $240,452. In this connection we call attention to the fact that upon the oral argument there was a dispute between

counsel, as to what the assessed valuation of the real property in said city was for the year 1905, and, because of this, the appellant challenged the correctness of finding No. 12 of the trial court, wherein the trial court found that the taxable real property of the city of Grangeville as equalized for the year 1905, was $251,591. The only evidence in the record as to the assessed valuation of the real property for the year 1905 is a stipulation entered into between the parties, and found at folio 166 in the transcript. This was "that the assessed valuation of the real property of the city of Grangeville for the year 1905, was $240,452." Finding No. 12 of the court was not sustained by the evidence, and in the face of the disagreement of counsel, both orally and in their briefs, as to what the assessed valuation of the real property was for the year 1905, this court must take the record as it is, to wit, that said valuation was $240,452. Leaving out of consideration the question as to whether or not warrant indebtedness should be considered in determining the amount for which a municipality may raise bonds, the present bonded indebtedness of said city is $5,000, which, added to the amount of said contract, would make $37,000, and would be in excess of fifteen per cent of the real estate value of said city for the year 1905. The city, however, attempted to evade this provision of the statute, by providing that only $30,000 of bonds should be issued; but it does not appear that said city made any legal provision whatever for paying the $2,000 excess, called for by said contract, or that it had any method or legal means by which said $2,000 could be paid. Section 3, of article 8, of the constitution of this state provides that, "No county, city, town, township, board of education, or school district, or other subdivision of the state, shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose, nor unless, before or at the time of incurring such indebtedness, provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to

constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void: Provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state." It will thus be seen that the ordinary and necessary expenses of said municipality may be contracted for by said city without any vote of the people, but where an expense is proposed to be incurred which exceeds the income and revenue provided for any year, such as the construction or purchase of a water system, or a part of such system, the same cannot be done without the assent of two-thirds of the qualified electors of said city. The contract made between said city and said Jack estate was such an expense that to authorize the same required a two-thirds vote of the qualified electors of said city, and the contract itself called for an obligation on the part of said city in excess of the amount for which bonds could be issued under the act of February 2, 1899, and as the excess of $2,000 called for by said contract was not provided for, and could not be provided for, in said bond issue, and it not appearing that said sum of $2,000 had been in any other manner provided for by law, it must necessarily follow that the contract of December 27, 1905, is in excess of the power of the city to make, under section 3, of article 8, of the constitution. The city cannot evade the provisions of the constitution and the laws of this state by making a contract which calls for a greater sum than the city was authorized to contract for, and then providing by ordinance for a bond issue for a part of the contract price, and leaving the payment of the balance of the contract price unprovided for. The contract and the proposed bonds were part of one and the same transaction. The respondent, however, contends that while the city might be under no obligations to comply with the terms of the contract made with the estate of W. M. Jack, deceased, and as the bonds were not voted for the purpose of purchasing the Grangeville waterworks owned by the said estate, but were voted generally for the purpose of acquiring, constructing,

and maintaining waterworks for said city, even though the contract was void, yet such fact could not affect the validity of the bonds for the reason that the city is under no obligation to purchase the system covered by said contract, and may use the money arising from the sale of said bonds in the construction and maintenance of a new system entirely. This, perhaps, would be true did it not appear clearly from the record in this case that it is the intention of the defendants to use the money arising from the sale of said bonds to purchase the Jack system of waterworks. It is alleged in the complaint, admitted by the answer, and found to be a fact by the court, that it is the declared intention of the city council of said city to invest the proceeds of the sale of said bonds in said Grangeville waterworks, now owned by the estate of W. M. Jack, deceased, in accordance with the terms of the contract set out in plaintiff's complaint as Exhibit "A" (which is the contract of December 27, 1905).

We cannot escape the conclusion, therefore, that the contract and the proposed bonds were part of one and the same transaction, and that if the contract was void, and the bonds were voted for the purpose of complying with the terms of said contract, that the bonds necessarily must fall with the contract.

The judgment is reversed, and the lower court is directed to enter judgment in accordance with this opinion. Costs are awarded in favor of appellant.

Sullivan, J., concurs.

Ailshie, C. J., sat at the hearing, but took no part in the decision.